Case number 14-7054, NB by her parent and ex-friend Michelle Peacock, et al., Appellants, v. District of Columbia & Municipal Corporation, et al. Ms. Liu for the Appellants, Mr. Lowe for the Appellees. Thank you, Mr. Peacock. Good morning. Good morning. Your Honors, may it please the Court, my name is Jane Liu and I represent the Appellants in this case. The Appellants are District of Columbia Medicaid recipients. The basic claim in this case is simple. When Medicaid recipients' claims for prescription drug benefits are denied by the District of Columbia, they are entitled to written notice informing them of the reason for the denial. The Supreme Court has found that Medicaid recipients have a statutory entitlement to their benefits that is protected by the Due Process Clause. The District of Columbia provides Medicaid recipients with prescription drugs under their state Medicaid program. Therefore, Medicaid recipients' prescription drug benefits are protected by the Due Process Clause. There can be no question that Medicaid recipients have the right to notice in this case because the District of Columbia concedes that Medicaid recipients have the right to a hearing when their prescription drug claims are denied. It is well established that due process includes the right to adequate and timely notice. Let me interrupt you just a moment. You have actually two bases, do you not, for your claim. One is the statutory regulatory basis. One is the Constitutional Due Process Clause. And you can win on the statutory claim without us reaching the Constitutional Due Process Clause. Am I wrong? That's correct. You seem to me to be blending the two at the moment. They are because the federal Medicaid statute incorporates the due process standards. So, in a sense, the analysis goes together. What I specifically am wondering about, you don't have to establish a property right in the receipt of privilege or right to receive the prescription drugs. If you're under the Constitutional claim, you would have to come within the liberty of property. That's correct. In a way that you don't have to for the statutory claim. That's correct. Is that not correct? Yes. I'm not hurt if this is not a hospital. That's correct. Okay. Right. If it comes under the federal Medicaid statute, then notice is required. Then you've got notice provided, the right to notice provided for in the statute and the regulations. That's correct. Okay. So, under the statute and the regulations, then, why is the standard denial of a prescription drug benefit, say for lack of prior authorization, why is that a termination, suspension, or reduction of covered services? Well, I guess there's two parts to that. The federal Medicaid statute, regarding the fair hearing provision, states that notice must be provided whenever a claim for medical assistance is denied. And so the – Oh, no. I don't think it says that. I think it says a hearing, you're entitled to seek a hearing when a claim for medical assistance is denied. But I think the whole question in this case is whether you're entitled to notice when a claim is denied.  Right. Which includes the right to written notice. Does the statute say that? I thought that's the question we're trying to decide is whether – Well, the Medicaid regulations implement that statute, and the Medicaid regulations include the provision of notice. Right. But opportunity for hearing is different than notice, right? I mean, opportunity for hearing means if I'm denied it, I can ask for a hearing. The question before us is, am I entitled to notice before I get – a notice that would include telling me that I can get a hearing? Those are very different, aren't they? You seem to be conflating the two. You seem to be saying that the fact that you're entitled to an opportunity for a hearing means that you're also entitled to notice. Right, because the – What's the basis for that? I mean, I think the basis for that comes from, well, both the way the federal Medicaid regulations are written, but also because due process case law makes clear that the right to a hearing includes the right to notice. So can we just focus on the statute? Because I think that the issue with the due process clause is I think you're right that as a general matter, when you have an entitlement to a hearing, the due process clause entitles you to some form of notice. It's not at all clear that the form of notice that the due process clause would entitle you to is the form of notice that's contemplated in the regs. There's just some separate constitutional calculus as to what kind of notice you're entitled to. So under your statutory regulatory argument, your argument is the regulations presuppose a form of notice. We're entitled to that every time there's a prescription drug denial, including for lack of prior authorization. And I guess it seems to me that that would mean that would require you to conclude that the prescription drug denial, including for lack of prior authorization, is a suspension, termination, or reduction of covered services, because that's what triggers the notice obligation. And that's my question is why is the routine denial of prescription drug coverage for a particular person, say for lack of prior authorization, why is that a suspension, termination, or reduction of covered services? I mean, I think that the notice provision has – it applies – I mean, I think it's been applied to include denials, mainly because of the language of 1396AA3, that it also applies to denials of Medicaid services. So I take that point, but I guess the way I read the regulations is it's saying that this provides notice in a hearing in two situations. One is when a claim for assistance is denied, and I'm looking at 431.200A. And then the second is under B, when the governmental body takes action to suspend, terminate, or reduce services. So it's dealing with a hearing requirement as to both. But as to notice, the notice provisions, it seems like, are triggered by suspension, termination, or reduction of services, not merely the denial of a claim for assistance. That's when notice kicks in. I mean, I think that the regulations should be interpreted in a way that gives substance to the statute, which requires an opportunity for hearing whenever a claim for medical assistance is denied. And I think that's why federal courts have interpreted denials to trigger the notice requirement as well – well, the notice and the hearing requirement as well. I would point out that subsequent regulations include denials under the MCO regulations specifically. The Congress subsequently enacted managed care regulations that made clear that the notice requirement is also applicable in the case of denials of payment of Medicaid services. Which that has precise wording that addresses it, I guess. But it doesn't seem like the same wording exists here. That's correct. I mean, I think that that's – I mean, I don't think it's – it's not included in the term under the definition of action, but I think courts have repeatedly decided that it applies in the case of denials of services as well. So would you agree with me at least that on the text of the regulation, just on the plain terms of the regulation, notice is predicated on an action, and an action is defined as suspension, termination, or reduction. I don't see a place where it says notice arises any time there's the denial of a claim. Now, you may have an argument that, of course, it has to be read that way, but I'm just saying, if you look at the letter of the regulations, am I missing something? Is there a place where it actually predicates notice on the denial of a claim as opposed to an action, which is defined as a suspension, termination, or reduction? I would say the regulation does not include the word denial. Right. However, I do think that the statute read in conjunction with the regulations clearly makes the notice requirement applicable to the denials of claims of medical assistance. And that includes the opportunity for a hearing. I think there's no opportunity for a hearing if there's no notice provided. Well, at least conceptually there could be, because if the person – I mean, I grant you that there's some practical issues here. I'm not going to deny that at all. But at least conceptually, if the person happens to know that there's an entitlement to a hearing, they're a master of the Medicaid regulations or the statute, or there's an advocacy interest group that can advise them as such, something like that. I mean, you can envision situations in which they ask for a hearing, and then I think the district says at that point they're actually entitled to the hearing. The question is whether they're entitled to get the form of notice that's in the regulation, because I think you could envision, if your constitutional claim goes forward, there could be a different form of notice which would tell somebody that they're entitled to get a hearing. For example, notice at the time that the claim is denied, which appears to have happened at least a couple of times in the coordinated allegations and complaints themselves. But it wouldn't be the form of notice that's contemplated in the regulations. I mean, I think the regulations incorporate the due process standards, and I think due process is clear that there is no opportunity for a hearing without timely and adequate notice. But that doesn't necessarily have to be the notice that's provided for by the regs. No, although Goldberg v. Kelly is pretty specific about what kind of notice is envisioned for welfare recipients when their claims for medical assistance are denied. So I think it would include the kind of individual written notice that... So, for example, and I'm sorry to be monopolizing the time, but for example, the regulations say under 431.211, sorry, advance notice, the state or local agency must send a notice at least 10 days before the date of action. It's hard to imagine that notice could be sent 10 days before a routine prescription drug denial, including for lack of prior authorization, because that happens simultaneously. So it seems like it's... So you're saying that the form of notice contemplated by the regulations is required every time there's a prescription drug denial, if you have to have 10 days advance notice? I think in this case there would be no need for advance notice, because the action is taking place at the pharmacy. So notice would be required at that point. We're not asking for advance notice. But the regs wouldn't... The form of notice that's contemplated by the regs prescribe that it has to go out 10 days beforehand. I believe that there's an exception for... At least I know in the MCO regulations that in the case of a denial of a payment of a claim, it would occur at the point that payment is denied. Okay. I didn't see that kind of provision in these regs, but I may have overlooked something. I mean, and in this case we're not asking for advance notice. We are asking for notice at the time that the action occurs. Okay. With the holding you're asking for here, however, if we hold that the regulatory notice is required, would that not be precedent for the proposition that there would have to be the advance notice, 10 days or 11 days or whatever it was? You may not be asking for that directly, but would that not be the precedent we would be creating? I mean, I don't read the regulations as requiring advance notice in the circumstances of this case. It says the state or local agency must send a notice at least 10 days before the date of action, and then accept as permitted under certain other provisions, and then there would be a question of whether it falls within an exception to that. Perhaps one of the exceptions applies. I mean, I see that in 206 the agency must provide the information required at the time of any action affecting his or her claim. I'm sorry, I don't have the – did you say that that's 431-211? Yes, exactly, 431-211. I'm sorry, I don't have that in front of me. That's okay. I believe that the statute allows – I believe the regulations – I'm sorry, I don't have it in front of me. That's okay. I believe that the regulations allow in certain instances where that notice be provided at the time that an action takes place when there's no way to anticipate that. The words are that accept as permitted under 431.213 and 431.214. Now, I have to confess, I don't know what those exceptions are, but that's the ones that are provided in the regulations. I mean, I do know that in other contexts – in the context of other benefits, that is not the case that advance notice is always provided. I mean, there are certainly many instances where the district can't anticipate that they're going to deny a benefit until the denial happens. Right, so I guess I'm just wondering – I think I agree with you on that, and so I guess I'm wondering which way that cuts, because it seems to me that if the 10-day rule applies or seems to apply, then what that might suggest – assuming the exceptions don't apply, and I took a look at the exceptions and it didn't leap out to me that they would, but I'm not an expert on this. 213 certainly doesn't apply. 213 doesn't seem – Or withdrawal of the – Right, and then what that seems to suggest is then that there's a problem in assuming that prescription drug denials, including for lack of prior authorization, are the type of thing that triggers the notice requirement in the first place, because these regs presuppose 10-days notice for something as to which 10-days notice doesn't make sense. Well, I mean, I don't have that regulation – I don't have all the regulations in front of me, so I can't speak to that question. I would just say that the MCO regulations make clear that – and a large number of recipients in the District of Columbia are MCO enrollees. For those recipients, there's no question that the notice would go at the time that payment of the claim is – at the time that the payment is denied. So I don't think that – And is there a claim in this case of entitlement to notice under those provisions? Yeah. Well, I mean, it's – our claim of entitlement is under the statute, but I do think that the MCO regulations are helpful in interpreting the scope of the – Did you argue that in your brief that those regulations – Yes, we did. They didn't help the scope? I mean – Well, where does that appear? I know we're defending your time, but we can do that. I apologize. It would be at pages 27 and 28 where we discuss the MCO regulations and the definition of the term action under those regulations. And I would note that the opportunity for a hearing requirement under that – under those regulations apply to the state Medicaid agency, not to the managed care organization. So, I mean, I think the MCO regulations are helpful in that MCOs are essentially performing the state's responsibilities. So, it would make sense that the duties with regard to notice for MCOs would carry over to the state Medicaid agency as well. It wouldn't make sense for state Medicaid – no, District of Columbia Medicaid recipients who are not enrolled in MCOs to have – First thought on that, you know, we have a glossary requirement for abbreviations and briefs. Yours lists three only. It does not include MCO. It might have been easier to find what – I'm sorry? Yeah, it included what the rules required. The second thing is, if those rules were going to apply to this circumstance, wouldn't they have said so? This does seem to fall outside the contemplation of those rules. You're saying they could borrow action from that, but couldn't they? Well, the managed care organization regulations were enacted subsequent to these other regulations. So, I mean, one could speculate that these regulations clarify, in a sense, what may not be clear from – But just to be clear on your argument, as I understand your complaint, you didn't argue that there's a violation of the MCO regulations. What you're saying – You argue there's a violation of the 431.200 ETSAC regulations, and what you're arguing now is that the MCO regulations inform the proper interpretation of the regulations that you claim were violated. Is that right? Okay. In the 200 series, the .211, when it creates or recognizes the two exceptions, neither of those exceptions apply on the 10 days. So if we put the 10-day rule in effect on this circumstance, we are requiring it. I mean, one deals with the death or withdrawal of the ship, if one just shortens the 10 days to five. Or fraud. I think in fraud, cases of fraud. I would say that we haven't had the opportunity to brief this issue, and so if – I mean, we'd be happy to provide something like a briefing on that particular issue. Just because I don't have the regulations in front of me, I would say that I do know in other contexts the 10-day rule does not apply. And I fully recognize that in this context it would not make sense. So I believe there is an exception to that requirement in instances of this case. Thank you. We'll give you back a couple minutes. Well, I think you know where to begin. Yeah. Good morning, Your Honors. Richard Love for the District of Columbia. There are two regimens that the statutes provide. Medicaid recipients can request a hearing, and it's very broad. Anytime they feel that an action is taken erroneously. But that's a different regimen where the district is required to affirmatively provide individually tailored written notice. Could you pick up on the line of questioning Judge Srinivasan led us through instead of your argument? That's what I meant with, I think you know where to begin. This is an argument that I don't think that you all have made before, is it? That the denial of coverage is actually outside the regulations here. Well, I think we have. I mean, I think what we said was that plaintiffs still maintain their drug coverage. It's never been terminated. It's not actually drug coverage. It's subject to the same conditions. Right, but your argument I think in the briefing and to date has been that, therefore, it's not a covered service. And that's a different argument for saying there's been no termination, suspension, or reduction. As far as I know, you've never made the argument that there's been no termination, suspension, or reduction. You focused on saying that if there's not prior authorization, then it was never a covered service to begin with. I think that plaintiffs have a response to that. I think we did. I think we said that they never complain about an ongoing service being terminated. Where in your briefs did you say that this is not a termination, suspension, or reduction? That's not what the district court found, I don't think. I don't recall seeing that argument in your briefs. Go ahead. I know I can't find the page right now, but I know that we made the argument that they don't complain about the termination of an ongoing service, and nor could they. The prescription drug coverage has never been terminated, suspended, or what they complain of is problems filling individual prescriptions, oftentimes for failures to comply with validly imposed restrictions, the district's prescription drug program. We said that each prescription, it's a duration. Each prescription is valid for a definite period of time, usually 30 days, for a definite quantity of medication. It needs to be renewed each time. And so there have been problems with individual requests for prescriptions. Would you agree with me analytically? The regulation defines action to mean a termination, suspension, or reduction of covered services. No, I agree with you analytically there is a difference. We've argued both. I think we certainly focus more on what the district court's rationale, that these were not covered services. But I do think we also made the argument that there was not a termination of prescription drug benefits here, and I think that's undisputed. They continue to have their drug coverage, but it's subject to the same restrictions. Well, no, but at least with some people in the complaint, I thought, for people whose benefits were denied because of lack of prior authorization, this argument seems to hold together. But there was at least some people in the complaint for whom the denial was not based on that. For some of them, we don't know what it was based on. For some of them, I thought it was based on lack of Medicaid eligibility anymore. At least that's what was said. And if that's true, this action is defined as termination, suspension, or reduction of Medicaid eligibility or covered services. I would agree. That's a termination of Medicaid eligibility. I don't read the complaint that way. With regard to the individuals who had problems because either the computer showed that they weren't Medicaid eligible or there was some delay in processing a recertification, I think was the case with a couple or a couple needed an associated hospitalization. So as to someone for whom the computer shows that there's no longer Medicaid eligibility, why isn't that a termination, suspension, or reduction of Medicaid eligibility? Well, let's take Mr. Rucker, I think, as one of the individuals. The pharmacy computer said they couldn't fill it because he wasn't Medicaid eligible. He did what should be done. The district has a toll-free hotline that's available exclusively for the prescription drug program. He called the hotline. The hotline said, no, you're Medicaid eligible. The computer, the pharmacist must have entered the wrong Medicaid identification number. He goes back to the pharmacy, and the pharmacist said, yeah, we're having problems with our computer. And a few days later, he sees he is, in fact, eligible. There's been no termination of Medicaid eligibility. There was a problem with regard to the computer. But there was never a decision by the district's Medicaid program to say, your eligibility is being terminated, reduced, or suspended. If there was, it certainly would require notice. But I don't think in any of these factual circumstances where there were problems, either with regard to the computer saying he was or she was or was not Medicaid eligible, or the situations where there was, I believe, a woman who there was some delay in processing her recertification. And, again, when she called the hotline or called Medicaid, they confirmed her eligibility. They said, you should have been noted as eligible since this particular date. And so none of these were an affirmative denial, clear in the record, that would trigger the notice provisions of 206. Did you rely on the 10-day provision? We did not raise that, but I agree with your honors. I do have it in front of me, including 431.213, which are the exceptions, and they are not applicable here. And I think when you read that, the only place that we did raise it, we gave an example. I think it is at the end of our brief with regard to, I believe it's Ms. Wynn. She had a problem with prior authorization. Ultimately, there was a change in her dosage, I believe, and she got prior authorization from the district and went back to the pharmacist. The pharmacist filled the prescription but gave her the old dose. And we pointed out that it would be impractical in that instance. I don't know how advance notice would be possible. We wouldn't even know that there was an error that even occurred. So it was a small point, I think, raised at the end of the brief, but we did not raise it in the way that you are pointing it out here. Can I ask you a question about the constitutional claim, which is in particular your argument that there's no state action? So if the district, instead of contracting out the function, the district just denies a claim for a prescription drug benefit, is there not state action? Yeah, if the district did not, yeah, it is. And then if the district then just contracts with somebody else to do that work, how is there not state action? Why isn't there state action? Well, I don't think we're disagreeing that if the – well, I think the point we were making in many of the instances that dealt with a covered service, that there were intervening actions that resulted in the denial that cannot be fairly attributable to the District of Columbia. When a pharmacist inputs the data incorrectly, that's not – and the prescription is denied as a result. That's not fairly attributable to the district. But all that tells you – that just seems to me to tell you that there was an error. So that goes to do – the whole point of having a due process Matthews versus Eldridge inquiry to decide what sort of process is due is to deal with the risk of an erroneous deprivation. But on the question of whether there was state action, it just seems like there was state action because the entity with which the district contracted produced a result that denied the claim. Now, there may be an explanation for why that happened. We do contract with Xerox to computerize. The electronic system is our agents. But I don't think when an error is made by the pharmacist in inputting data or a pharmacist gives the wrong dose, that those actions are fairly attributable to the District of Columbia. And there are incidents here, and we've identified them, I think, with some specificity in our brief. But what they're complaining about is that the claim is denied. And as a consequence of that claim denial, they have to do some things. They have to go to a different pharmacy. They have to undergo some burden as a consequence of a claim denial. Now, there may be some explanation for why the claim was denied. It may have been erroneous. It may have been that a pharmacist made an erroneous key entry. It may have been that a physician did something wrong. But their point is that the claim was denied, and I underwent some burden. And that claim denial was state action because it was as if the district did it. And then you get into questions about the… Then that would mean any time, for whatever reason, that a prescription is denied, that there's state action. Yes, and there is. And then the question becomes, what's the process that's due? And that's where you can make an argument to the effect that, well, there's just really hardly any risk of erroneous deprivation because there's always a process by which these things can be quickly rectified. The degree of notice that's being supplied is amply sufficient to deal with that. The hearing machinery never kicks in because somebody can call a hotline, and they can get this corrected right away. So there's all kinds of fail-safe mechanisms that are built into the system. So, therefore, the degree of process that's supplied is due. It's what's required by the Due Process Clause. But it doesn't say that there wasn't state action in the denial to begin with. Well, I just would disagree with the beginning of the analysis, and that is that there is a state action any time an individual goes in with anything that purports to be a prescription, gives it to the pharmacist, and leaves the pharmacy without the drug. You're forgetting a very important actor, and that's the government, right? This is a government program. It is a government program, but there are intervening factors. I think they're evident in the facts of the allegations of this complaint. I think we've pointed them out. I think, again, I don't want to go back to the situation with Mr. Rucker. So if the government executes a search warrant, and it's based on some terrible advice it got from a witness who's not a government employee, and then they visit the property, and it results in some sort of actionable harm, I think the government would be entitled to say, well, there was some other error that caused me to do this. But there's no doubt that the action that was undertaken and that's being complained of is state action. I agree. But I think the actions of the pharmacist or the other actors that we've described in our brief are intervening causes that removes the state from the equation where it was the state's action that, you know, substantially their actions were substantial. Can that be told at the 12B6 stage? Can that be discerned at the 12B6 stage? That sounds like a factual defense that, okay, maybe it happened, but it wasn't us, it was them. We're at 12B6. This is not a rejection. This is 12B6. I agree. And I think what we tried to point out where the only reasonable inference was that it was the result of some third-party actor. Before I sit down, I did want to point out one part of the brief where the appellants correctly indicate that the district does not have a formulary. And I think that's true, and I apologize for the error, but I think it's a distinction without a difference. What the district has is a prior authorization program, and the regulations clearly allow states to require prior authorization as a condition of coverage or payment of any covered outpatient drug. And so it's really not, you know, you just substitute the language of what is D5 instead of D4. I think it brings you to the same place, and that is that the district has the authority to condition coverage of these drugs. The distinction between coverage and payment is really a distinction without a difference here. This is a third-party provider payment program. The district doesn't provide services directly. And when the statute, and it is the statute that says that states may require prior authorization as a condition of coverage or payment, that means that you basically can, you know, that drugs that require a prior authorization, they're not covered without that prior authorization. If there's no further questions, then we would ask the court to affirm the district court's decision. Thank you very much. Just to respond to some of the district's points, well, I wanted to go back to that 10-day requirement. You know, the district's position is inconsistent with its own practice. There are numerous other instances where the district provides notice to recipients without providing it 10 days in advance. So clearly it's possible. For instance, in their own briefing, they talk about when a prior authorization request is denied, they provide notice. But that notice is not provided 10 days in advance. That notice is provided at the time that that prior authorization request is denied. So clearly they are able to provide notice. All that shows is that they didn't think of this argument before either, right? But now we have it in front of us. What do we do with it? I also think that it would mean that there is room in the regulations for them not to provide notice 10 days in advance. I mean, if they're providing notice not 10 days in advance for other services, I don't think they're going to say. To me, the question goes back to what language in the regulation triggers the notice requirement that you're arguing for. And there isn't any. I mean, you could say that the regulations can't be implemented successfully without doing it this way, but you haven't been able to point to anything in the regulations that triggers the type of notice requirement that you're arguing for now. Perhaps the constitutional argument. How would the constitutional notice look any different than the notice that's called for in the regulations? I mean, I think that the constitutional notice would still have to state the reasons for the denial and inform the recipient of the right to a hearing. I don't think the notice would be all that different. Is this a property right, a protected right under the due process of the Constitution? It is. What's your measure of authority for that property? Goldberg v. Kelly. And I would also point to this Court's decision in Gray Panthers v. Schweiker, where they found there was a protected property interest in Medicare benefits that were denied in the first instance. So, I mean, and I think that that's a good point, that at the end of the day, regardless of what the regulations say. Well, what was the case in this case? Gray Panthers v. Schweiker? It's the Gray Panthers. But, I mean, at the end of the day, the question is what does due process require, and due process requires notice in this case. When a Medicaid recipient's claim for a Medicaid benefit is denied, the Supreme Court has made clear that notice is required and that there's no right to a hearing if notice is not provided. So, but it could be that the notice that's required. Let's just suppose we agree with you to that extent of the analysis. It could be that the notice that's required by the due process clause is the notice that's in fact received, which is to say at the time that you get your claim denied for prior authorization, you get a notice that says there was no prior authorization, now you have an opportunity to seek a hearing if you want to. That's in the complaint itself, that a couple of people got that form of notice. Well, that's, I mean, the recipients got that notice because they asked for a printout. But even that notice, I mean, I wouldn't even call that a notice because what they got was the rejection message that's generated by the claim system, which is really just a code. It doesn't tell them exactly the reason for the denial. But I thought it says, under the language of the complaint, I thought it said that you have an entitlement to seek a hearing. Isn't that what the complaint itself says? So you do get notice of your entitlement to seek a hearing? No. No, you don't. When a prescription drug claim is denied, there's no notice given whatsoever to the Medicaid recipient. Okay. And I think perhaps you're referring to maybe in instances where a Medicaid recipient might have requested a prior authorization and that was denied? Yeah, maybe. That's a different scenario. So that means that when a doctor requests prior authorization for a drug, notice will be given that that request has been denied. But if a Medicaid recipient goes to a pharmacy and their prescription drug claim is denied because of any requirement, any limitation, or any determination by the district that it's not covered, they get no notice whatsoever at the pharmacy in any circumstance. And there's no notice of a hearing and the reason of the denial. And now in the prior authorization situation, and I can't find the specific allegations in the complaint as I sit here, but maybe they were the prior authorization situation. In that situation, the individual, the beneficiary, gets a notice that says prior authorization has been denied and you can seek a hearing? Right. But I want to be clear that that scenario is entirely different than what's going on in our complaint. That is when a doctor submits a request saying I'm seeking prior authorization for a drug with Medicaid and the district determines that for some reason they're not going to grant prior authorization upon that request. But that's separate from when they go to the pharmacy and prior authorization hasn't been obtained, then the claim is denied and the recipient gets no notice. So the recipient has no idea why they've been denied the drug. It could be a prior authorization, but they wouldn't know  Our due process Constitutional Jurisprudence says that due process means a process that's due under the circumstances, which would not necessarily entail a 10-day prior notice. What would be the notice that your contention is? That's getting to be a very awkward sentence. What would you say is sufficient notice for due process purposes under the Constitutional Claims? I think it should be written notice that states the reasons for the denial and informs the recipient of their right to a hearing. I think it should inform them that a denial has occurred because in many instances the recipient doesn't even know that their claim has been denied without notice. What happens at the pharmacy then? Basically they submit the prescription. The pharmacy submits the claim through their computer and then if a rejection message comes back, the pharmacy says Medicaid has denied coverage of your drug and then the recipient is just left to walk away and try to figure it out. So at that point at least I take your point that as a practical matter that could be deficient, but you've been informed that your claim has been denied. No. There's no guarantee. That's only because the pharmacy says something, but the pharmacy is not required to tell them anything. Well, they're going to tell them something. Right. Unless they've been told. So I think the Medicaid recipient knows that they can't obtain their drug for some reason or another. But beyond that, I don't think they really know what is taking place. So that's what I mean. I know for a fact that some of the Medicaid recipients didn't realize that Medicaid had done anything in the case because they weren't given anything that said that Medicaid had done something. So that's the problem if you don't provide notice. The recipient has no idea what's going on. They just know that they can't get their drug. They know that they can't get their drug. They may not know that it's because of Medicaid. They definitely don't know that insofar as it's because of Medicaid, they're by the district's own admission entitled to a hearing.  Absolutely. Okay. Great. Thank you very much. The case is submitted.
judges: Griffith, Srinivasan, Sentelle